Affirmed.

33 C.C.P.A.(Patents)

## Application of MORK.

### Patent Appeal No. 5142.

Court of Customs and Patent Appeals.
May 7, 1946.

Roger Sherman Hoar, of Milwaukee, Wis., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting four claims, numbered 6, 7, 9, and 11 of appellant's application for a patent for alleged "Improvements in Fairleads for Winches." No claims were allowed.

We quote the claims as follows:

"6. In a fairlead for a two-drum winch, the combination of: a base; a T-shaped mast, comprising an erect portion and a cross-piece at the top of the erect portion; two fixed sheaves, each journaled on one end of the cross-piece; a bar secured across one face of the erect portion of the mast, parallel to the cross-piece of the mast; two swivel sheaves; two housings, one being for each swivel sheave, each housing having a swivel-axle; two sockets

carried by the base, one being for each axle; two sockets carried by the bar, one being for each axle; and means for removably securing the mast to the base, so as to demountably secure the swivel housings."

"7. In a fairlead for a two-drum winch, the combination of: a base; a deck-plate; a T-shaped mast, supported by the deck-plate, and comprising an erect portion and a cross-piece at the top of the erect portion; two sheave-housings, one being rigidly mounted at the extreme end face of each end of the cross-piece; a fin along the cross-piece, rigidly secured thereto and to the two sheave-housings; two sheaves, one being journaled in each sheave housing; two swivel-housings, swiveled on the base and mast; and two sheaves, one being journaled in each swivel-housing."

"9. In a fairlead for a two-drum winch, the combination of: a base; a T-shaped mast, supported by the base, and comprising an erect portion and a cross-piece; and two sheaves each journaled on one end of the cross-piece."

"11. A fairlead according to Claim 7, further characterized by the fact that the erect portion of the mast is made out of a single piece of sheet metal bent into a C horizontal cross-section."

The following general description is taken from the decision of the board:

"This application is concerned with improvements in winches of the type used with tractors. The winch is of the two drum type in which the drums are in alignment. These drums are supported by a base member bolted to the rear end of the tractor frame, and are activated from the power take-off of the tractor. The base frame extends over the drums and to this part is attached a plate carrying an upright mast of T-shape. To the head or cross member of this mast are pivoted two sheaves, one on each end of the head. About midway of the pedestal of the mast is attached a horizontal bar having openings for two sheave housings. These housings have pintles mounted in the openings in this plate and at the bottom there are smaller bearings for the lower ends of the pintles. Within these housings are sheaves over which ropes pass to the work not shown."

In rejecting the claims the examiner cited the following references:

LeTourneau, 1,912,645, June 6, 1933;

Lawler, 2,301,782, November 10, 1942;

Hutchins, 2,312,552, March 2, 1943;

French, 2,321,905, June 15, 1943.

It is noted that the LeTourneau patent was cited in connection with the rejection of claim 6, and also another claim numbered 5, which was dismissed from the appeal before the board and is not involved here. The board made no reference to that patent in its decision but it was not overruled as a reference and appellant has covered it in the reasons of appeal before us.

In the brief for appellant each of the claims is separately analyzed and discussed. Before making such analysis, however, the brief set forth a general statement, the substance of which is that the application is in a crowded art; that the "outstanding feature" of appellant's fairlead is that the housings of his upper sheaves are rigidly mounted on the ends of the top piece of a T-shaped mast; that additional details (claimed to be important) are the presence of a bracing-fin extending from sheave-housing to sheave-housing along the top piece of the T and the fact that the stem of the T is C-shaped in horizontal cross-section, and that "Of some cumulative importance" is the method of demounting the swiveled housings of the two *lower* sheaves by unbolting certain described bolts.

It is alleged that "The whole ensemble produces a more sturdy and compact tractor-winch fairlead than has ever been known before."

Much emphasis is placed upon the allegation that the application is in a crowded art. Appellant concedes that there are many similarities between his fairlead and the fairleads of the references but contends that "the recital of as much as one essential element, patentably distinct from anything in any of the references, should render a claim allowable."

Near the end of the brief five elements, claimed to constitute novel features in appellant's winch, are set forth as follows, the italics being those used in the brief:

"*First*, a T-*shaped* mast. French's sheave-support *approaches* T shape. Hutchin's sheave support *is* T-shaped, it is true, but is associated with his sheaves in a manner not at all comparable with Appellant's device.

"*Secondly*, the *rigid* mounting of the housings of the upper sheaves transversely *on the end faces* of the cross-piece. None of the references mounts its upper sheaves rigidly on the end faces of *anything*.

"*Thirdly*, the ready demountability of the *swiveled* housings of the two *lower* sheaves (not to be confused with the *rigid* housings of the two upper sheaves mentioned above). Although each of the four references has lower sheaves which are swiveled, none of the references plans to demount its sheaves in the manner claimed by Appellant.

"*Fourthly*, the reinforcing fin 32. Not only does none of the references have such a fin—*none of them has even some other form of reinforcement performing the function of such a fin.*

"*Fifthly*, the C-shaped cross-section of the *stem of the mast*. None of the references has this structure. Lawler has merely a D-shaped *flat slab*, which is something quite different."

The brief then adds:

"Surely these five features, which singly and in combination make Appellant's fairlead the light compact sturdy little tractor-accessory that it is, entitle this fairlead to the limited degree of patent protection which Appellant is asking."

The brief criticizes with some severity both the decision of the examiner and that of the board.

It alleges, in substance, that the former's analyses of appellant's fairlead and the fairleads of the references are "verbose and complicated"; that he gave most emphasis to features not relied upon by appellant for patentability, and that his rejection was based on a most complicated combining of the references.

Concerning the decision of the board, the brief asserts, inter alia:

"The Board of Appeals of the Patent Office appear to have given this case a very superficial and ununderstanding [sic] consideration. This fact is indicated by their complete failure to grasp the identity of one of the elements relied upon. In this connection, will the Court please note that Claim 7 * * * calls for:

· " 'a fin along the cross-piece, rigidly secured thereto and to the two sheave-housings;' "

Elsewhere in the brief it is alleged:

"The Examiner's complicated analysis seems to have so bewildered the Board, that in the first place they did not attempt to follow and confirm it, and in the second place they showed their lack of understanding of the structure by misapplying Claim 7. * * *

"So we suggest that Your Honors totally disregard the actions of the Examiner and the Board, and start from scratch in a comparison of Appellant's claims with the showings of the three reference patents." ·

In an early part of the brief, counsel for appellant states, in substance, that he was prevented "by urgent personal reasons" from attending the hearing before the board to make oral argument in consequence of which he submitted on briefs, and expressed regret that he did so submit the case. In connection with this statement the brief before us states:

"That the Board did not make sufficient study of the papers to identify correctly the element in which the inventiveness of one of the claims inhered, coupled with the fact of submission to the Board, without argument, is a strong indication that Appellant has not yet had his day in Court."

Discussing, first, the criticism leveled at the decision of the examiner, we do not share the view that his statements describing the features of the application and the features of the references are "verbose and complicated" to any objectionable degree. It is true that it required considerable space to analyze them so as to bring out clearly the elements of structure and their arrangement in the combination, but it does not seem to us that the examiner is subject to criticism for taking the necessary space to explain them.

Of course, the question of whether his application of the references to the dis-

closures of the application was correct is a matter for legitimate argument, but so far as his descriptions of the features are concerned, we do not find their correctness challenged by appellant.

We deem it unnecessary to our decision, therefore, to quote, or paraphrase, the examiner's detailed descriptions of the features of the application and those of the references, but we think it proper to quote that part of his statement applying the references to the claims before him. It reads:

"The claims have been rejected as follows:

"Claims 5 and 6 are rejected as unpatentable over Lawler in view of Le Tourneau, Hutchins and French combined as indicated below. It would be merely following the teachings of Le Tourneau to provide the sheaves 24 of Lawler with an axle and the plates 21 and 22 of Lawler with sockets. It would be merely following the teachings of Hutchins or French to have the mast of Lawler T-shaped. Matching the elements in claim 5 (claim 6 is similar to claim 5) with the equivalent parts in Lawler; 'a base' should [sic] be the transmission housing A; 'a deck-plate' would be plate 12; 'a T-shaped mast' would be column 14, the 'erect portion', and plate 17, the 'cross piece' (the patents to Hutchins and French show constructions having their erect portions supporting their cross pieces in the center and such construction is merely a matter of choice in Lawler); 'two fixed sheaves' would be sheaves 18; 'each journaled on one end of the cross piece' interpreted broadly would appear to be fairly met by the structure of Lawler wherein sheaves 18 are journaled in housings secured to the ends of plate 17; 'a bar secured across one face of the mast' is plate 21 which is integrally secured to plate 12; 'two swivel sheaves' would be sheaves 24 when the sheave on the right looking at Fig. 2 of Lawler is in its lower position between plates 21 and 22; 'two housings' are the housings for sheaves 24; 'each housing having an offset swivel-axle' is structure equivalent to that shown by Lawler and shown in Fig. 2 of Le Tourneau; 'two sockets carried by the base' is the plate 22 with its perforations carried by transmission housing A; 'two sockets carried by the bar' is the plate 21 with its perforations; 'and means removably securing the deck-plate to the base, so as to demountably secure the swivel housings' would be bolts 13 which would removably secure the swivel housings of Lawler with the swivel mounting shown by him or with swivel mountings such as shown by Le Tourneau.

"Claim 7 is rejected as unpatentable over Lawler. The particular form of support and bracing used by applicant does not involve invention over Lawler. Many forms of frame and bracing could be used to support the upper sheaves of Lawler and in the absence of a novel result the use of another form than that shown by Lawler would not involve invention. It does not appear to the examiner that the statement 'one being rigidly mounted at the extreme end face of each end of the cross-piece' is sufficiently definite as to how it applies to applicant's own structure to define invention over the structure shown by Lawler or such modifications of Lawler's structure that could be made by those skilled in the art without involving invention.

"Claim 9 is rejected as fully met by French.

"Claim 11 is rejected as unpatentable over Lawler like claim 7. To do away with plates 15 and 16 in Lawler would not involve invention.

The board approved the decision of the examiner for the reasons embraced in his statement following the appeal to it, but it did not give descriptions with the same minuteness as those given by the examiner. We find no justification for the assertion in the brief for appellant hereinbefore quoted to the effect that the board seems to have been "so bewildered" by the "Examiner's complicated analysis" that "they did not attempt to follow and confirm it." Had the board disagreed with the examiner's analysis, or with his application of the references, doubtless it would have so stated, and given its reasons for disagreement. Since it agreed, it was not incumbent upon it to state in minute

detail the reasons for its agreement, even though it might properly have done so.

Furthermore, we find no justification for the assertion in appellant's brief, as hereinabove quoted, to the effect that the board "showed their lack of understanding of the structure by *misapplying* Claim 7." (Italics ours.)

We do not understand just what is meant by the expression "misapplying" the claim.

The particular feature of claim 7 which appellant emphasizes is "a fin along the cross-piece, rigidly secured thereto and to the two sheave-housings."

In its decision the board said, inter alia: "The patent to Lawler shows at 16 a reinforced web used in much the same manner as appellant's webs 36."

The accuracy of this statement does not appear to be questioned by appellant, but it is insisted that "Appellant is *not* claiming his webs 36; rather he is claiming his fin 32," and it seems to be his view that the above statement of the board constituted the basis of the board's rejection of claim 7.

We do not so understand the board's decision. It made no specific analysis of any one of the claims, and the statement quoted was simply as to one feature of the Lawler reference.

It is true that the examiner specifically rejected claim 7 as unpatentable *over* Lawler, but it was not held that Lawler disclosed a fin such as that of appellant. The specific holding reads in part, "Many forms of frame and bracing could be used to support the upper sheaves of Lawler and *in the absence of a novel result* the use of another form than that shown by Lawler would not involve invention." (Italics ours.)

We are not convinced that the holding of the examiner was erroneous, and, as of course, are not convinced that the board erred in affirming it.

Hereinbefore we have quoted appellant's suggestion to the effect that we disregard the action of the examiner and the board and "start from scratch" in comparing the claims and the references. The suggestion is somewhat novel to say the least of it. It would seem to require that the court assume the functions of the Primary Examiner which we may not do. The statute defines our duty and limits our authority. We are required to review the decision of the board affirming the decision of the examiner when that decision is adverse to an appellant, and our review must be confined to the errors alleged in the reasons of appeal. Obviously, we cannot disregard a decision and at the same time review it.

We have quite carefully considered the decision appealed from in the light of the reasons of appeal and the arguments made thereon, and we are not convinced that appellant's modifications of the prior art constituted invention. It may be that appellant's activity was in a "crowded art," or field, but unless his modification required the exercise of the inventive faculty, he may not be granted a patent because of such modification.

We do not share appellant's view that he did not have his day in court.

The decision of the Board of Appeals is affirmed.

Affirmed.